## NEW YORK COMMON PLEAS.

HENRY WEIL and another agt. JACKSON S. SCHULTZ and others.

JOHN J. ECKEL agt. THE SAME.

Where a business is so carried on in the city of New York that it is a *public nuisance per se*—the odors arising from it rendering life uncomfortable, and being injurious to health : *The Metropolitan Board of Health* of the city, have the power expressly given to them by the act under which they were created, and it is their duty to act, and to act promptly, to *suppress the business* and abate the nuisance, where *notice to show cause* why these acts should not be done, have been duly served upon the parties interested, and by them disregarded.

The abatement of a *nuisance*, is not the appropriation of private property to public use without the judgment of our peers. It is the suppression of a thing declared to be illegal by the law of the land, and which may be destroyed by any citizen, if done in such a manner as to invade no law of property, or for the preservation of the peace.

When, therefore, the law invests a public body with the power to do such an act, in express terms, by no rule of construction can such a law be held to be unconstitutional.

*Special Term, July,* 1866.

THESE were actions to restrain the defendants, who constitute the Metropolitan Board of Health, from enforcing an order made by them against the fat-boiling establishments of the plaintiffs. The order required them to discontinue their business until the mode of conducting it was so altered that no offensive odors should escape into the external air.

Temporary injunctions were granted, and the motion was for a continuance till the trial of the actions.

KAUFMAN, FRANK & WILCOXSON, *for Weil.*
CHARLES S. SPENCER, *for Eckel.*
GEORGE BLISS, JR., *for Board of Health.*

The opinion below was given in the *Weil case* only, but the decision was the same in both.

BRADY, J. I regret that I have been prevented by illness from considering and deciding this motion at an earlier date. The importance of the subject demanded, and would other-

wise have received, immediate attention. To that class of our community particularly, who have neither the leisure nor the means to flee from offensive odors arising from any cause, it is of vital consequence that the Board of Health should not be restrained in the exercise of powers conferred by law; those powers being designed to accomplish what would seem to be the primary object—the greatest good of the greatest number.

The business of the plaintiff, carried on in the mode he does it, is a nuisance *per se*. It has been so declared, and if it has not been, the proof before me establishes the fact. It is enough to create a public nuisance, that the enjoyment of life within the house is made uncomfortable, whether it be by infecting the air with noisome smells, or with gasses injurious to health. The odors arising from plaintiff's business render life uncomfortable, and are injurious to health. The Board of Health had the power, therefore, to suppress the plaintiff's business. It is expressly conferred, and the plaintiff was notified of their intended interference, by a notice which gave him an opportunity to show cause against the proceeding, in which he failed, and the order against him thereupon became absolute.

The Board of Health having the authority to abate the nuisance, it became their duty to act, and to act promptly; and the failure to have done so would, in my judgment, have been criminal negligence. The Board of Health are invested with extraordinary powers, but necessarily so. In the language of Chief Justice SAVAGE (15 *Wend*. 264), "it is right that such power should exist somewhere, to be exercised upon proper emergency. If the civil authorities were obliged to await the slow progress of a public prosecution, the evil arising from nuisances would seldom be avoided." The emergency suggested by that learned judge exists, and the summary remedy authorized by the act of the legislature, constituting the present Board of Health, should be employed in all cases where the existence of a nuisance is established by competent evidence.

The plaintiff being engaged in a business which creates

Weil agt. Schultz.

a nuisance, and the Board of Health, after proper investigation, and notice to him, and on sufficient evidence having declared such to be the fact, the power of which I have spoken has been employed, and the remedy determined. The plaintiff must, therefore, yield to the necessity which calls upon the Board of Health to arrest his business. It appears, also, from the evidence before me, that he is not entitled to public sympathy. There may be cases in which the applications of a summary remedy would operate with apparent injustice and seeming oppression, but this is not one. Every man, by securing the general protection of life and property, from the community of which he becomes a member, surrenders some rights strictly personal, and should be prepared to yield others in times of emergency caused by danger of pestilence and death. The plaintiff is not called upon to make extraordinary sacrifices, however; science has shielded him from that, and established the fact that his business may be carried on without violating the law of the land. He can, by adopting improved mechanism and process, destroy or deodorize the offensive vapors which are created by the business.

I have thus generally stated my views of this case, and will refer to the authorities upon which I rest my decision. (*Laws of* 1866, *in relation to the Board of Health,* § 14; *Catlin* agt. *Valentine,* 9 *Paige,* 575; *Brady* agt. *Weeks,* 3 *Barb. S. C. R.* 157; *Cropsey* agt. *Murphy,* 1 *Hilt. R.* 126; *Dubois* agt. *Budlong,* 15 *Abb.* 445; *Van Wormer* agt. *The Mayor,* 15 *Wend.* 262; *Hyatt* agt. *Commissioners of Highways,* 35 *Barb.* 308; *The People* agt. *The Board of Health,* 33 *Barb.* 345.)

It may be proper to say in conclusion, and in reference to the point taken but not elaborated, that the act was unconstitutional in granting the power exercised by the Board of Health against the plaintiff: That the abatement of a nuisance is not the appropriation of property to public use, without the judgment of our peers. It is the suppression of a thing declared to be illegal by the law of the land, and which may be destroyed by any citizen, if done in such a

manner as to invade no law of property, or for the preservation of the peace.

When the law invests a public body with the power to do such an act, in express terms, the act to be done becomes the less objectionable, inasmuch as the persons who constitute that body are selected for the purpose, and the restraining power of the courts should be exercised against them, if at all, with great caution. The history of the laws creating boards of health in this city and throughout the state, and in other states and countries, if it were proper to delay the decision of this motion to demonstrate it, will show that extraordinary authority in reference to the general course of legal procedure, has been conferred on the persons charged with the duties of preserving the public health. It is proper that it should be so to prevent the spread of epidemics, and the fearful mortality which ensues, and is kindred to the power which is given to the mayor and others to destroy buildings, in case they deem them likely to take fire, or to convey fire to other buildings (2 *Rev. Laws* 1813, *p*. 300, § 80); all resting upon the doctrine of necessity, which becomes imperious in its demands.

The Board of Health may and should be regarded as the representatives of the people of this city on the subject for which they were organized, to be aided in all respects in the lawful exercise of their authority, which looks to the high and noble duty of preserving health and saving life.

I think the act, so far as it relates to the authority exercised in this matter, is constitutional, and that no case can be found in which it, or a similar law of this state, has been held to be otherwise.

Temporary injunctions dissolved, and motion for continuance denied, with costs.