In the Matter of Equilease Corporation, Appellant. J. C. Van Voorhis, as Trustee in Bankruptcy of Gibbs Corporation, Third-Party Claimant Respondent; Marine Investment Company, Judgment-Debtor Respondent.

First Department, May 21, 1963.

*Morris Shapiro* of counsel (*Sahn, Shapiro & Epstein,* attorneys), for appellant.

*Herbert L. Finkelstein* of counsel (*Martin L. Conrad* with him on the brief; *Jaffin, Schneider, Kimmel & Galpeer,* attorneys), for third-party claimant respondent.

*Bert B. Rand* of counsel (*Trammel, Rand & Nathan,* attorneys), for judgment-debtor respondent.

STEVENS, J. Petitioner-appellant Equilease Corporation (herein Equilease), on July 20, 1962 commenced an action in the Supreme Court to recover the sum of $23,332 allegedly due it from Marine Investment Company (herein Marine), a foreign corporation not authorized to do business in New York.

Equilease obtained a warrant of attachment, which was executed by the Sheriff of the City of New York by attachment of certain property of Marine consisting of a deposit of $250,000 held by Barclays Bank, D. C. O. (not involved in this proceeding) and five notes made by Skinner Drilling Company, Ltd., to the order of Marine, which notes were pledged with Unilease, Ltd., a wholly owned subsidiary of Equilease. Jurisdiction of Marine was completed on July 30, 1962.

On August 20, 1962, Marine, by verified petition filed in the United States District Court, Southern District, sought a removal of the action to that court on the ground of diversity of citizenship. A stipulation was signed by the attorneys for the respective parties extending the time of Marine to answer to September 25, 1962. No answer was interposed.

October 16, 1962, pursuant to rule 55 of the Federal Rules of Civil Procedure, Equilease moved for entry of judgment for the amount demanded in the complaint. Marine opposed to the extent that it asserted any judgment entered should be in rem and not in personam, contending there was no general appearance. Subsequently a judgment was entered in favor of Equilease in the sum of $24,164.38 " limited to the property attached."

On December 10, 1962, a transcript of such judgment was filed with the New York County Clerk and on the same day an execution issued directing the Sheriff to sell the five promissory notes. The Sheriff noticed a public sale thereof for January 4, 1963, but rescinded the same January 3, 1963, because of a claim contained in an affidavit of one of the attorneys for Van Voorhis, as trustee in bankruptcy (herein claimant) of Gibbs Corporation (herein Gibbs) which was served upon him on that date.

The affidavit contains assertions upon information and belief that on April 25, 1961, Skinner purchased a barge from Unilease or Equilease, which in turn had purchased the barge from Marine. As part of the transaction the barge was to be converted for Skinner's use into an oil-drilling platform. Marine arranged for Gibbs to do this conversion work for a sum of approximately $600,000.

A part of the purchase price in the amount of $250,000 was represented by the five notes herein involved. These notes were executed by Skinner to Marine, and pledged by Marine, with the consent of Skinner, with Unilease. The notes, due in 1965, are nontransferable without the consent of Skinner.

Claimant asserts Marine was unable to pay Gibbs for the conversion work done on the barge and that Marine agreed in

1961, it would hold such notes for the sole use and benefit of Gibbs. Claimant now asserts the sole beneficial interest in such notes.

Earlier, and on August 29, 1962, claimant by letter had asserted a claim to the notes, alleging the notes "are assigned by Marine Investment Company to Gibbs Corporation." A similar claim *of assignment* (emphasis supplied) had been asserted on December 24, 1962, in a letter from claimant's attorneys to the Sheriff. The record indicates that Marine never requested, and Skinner never gave, consent to such assignment.

Sometime about September 25, 1962, Barclays instituted an interpleader action in Federal court seeking which parties were entitled to the $250,000 cash deposit. By reason of defenses, counterclaims and cross claims, a question of the parties interest in the notes arose, and Marine sought an order enjoining the sale of the notes by the Sheriff. On January 3, 1963, the Federal court granted a preliminary injunction staying the sale of such notes on condition that a bond be filed by Marine in the sum of $25,000. This bond has not been filed, or the injunction extended.

By notice dated January 3, 1963, the Sheriff demanded Equilease furnish a bond for $500,000, with interest, or else institute a proceeding pursuant to section 696 of the Civil Practice Act.

Equilease thereupon instituted the present proceeding pursuant to section 696 of the Civil Practice Act, seeking a final order adjudging that title of said notes, at time of attachment and motion, was in Marine, free of any lien or interest by claimant. On January 24, 1963, an order was entered denying the motion, without prejudice to its renewal in the event title was not determined in the Federal action. Equilease now appeals from that order.

Under section 696, where a judgment creditor is notified of a third-party claim to property or proceeds of a sale in the Sheriff's hands, such judgment creditor must either furnish the indemnity required or institute a section 696 proceeding. Since Equilease's claim is only for $24,164.38, it understandably did not wish to incur the expense of posting a bond for $500,000. Instead it elected to institute this proceeding.

By the language of the statute a proceeding thereunder only determines title and such determination will protect the Sheriff from liability when he proceeds in accordance therewith (*Matter of Monarch Sales Co.* v. *Vollmer,* 188 Misc. 281; *Long Is. Tinsmith Supply Corp.* v. *Ramberg & Son,* 172 Misc. 158).

Because of a failure to file the bond provided for when the temporary injunction was granted (which injunction has now

expired) the judgment or interest of Equilease is not protected. Special Term, and the parties themselves, recognize that title to the notes might not be decided in the Federal interpleader action. Indeed, the Federal restraining order recognizes that possibility, for the language of the order reads, in part: "pending final determination of this [the Federal] action   * * *   or the adjudication of title to those notes" (emphasis supplied). Moreover, such order did not purport to enjoin a proceeding to determine title, but only a sale or other disposition of the notes. By reason of the nature of the action pending in the Federal court, title to the notes, if at all in issue, is only indirectly involved. Thus comity, or a deferring to the Federal court on jurisdiction as a courtesy, does not come into play, for the nature of the action and the nature of the relief sought differ. Even if the same relief were sought, the Federal action need not be a bar to litigation in the State court (cf. *Admiral Corp.* v. *Reines Distrs.*, 9 A D 2d 410, affd. 8 N Y 2d 773).

From the record claimant asserts its claim arises by assignment, but fails to allege assignment in accordance with the terms of the notes. Subsequently, it additionally, or alternatively, claims a beneficial interest by reason of an alleged agreement between Marine and Gibbs. The language of section 696 refers to a claim of the debtor's property "by or on behalf of another person, as *his* property." (Italics supplied.) The procedure there outlined "was designed to protect the judgment creditor, third parties with claims to the property sought to be reached, and the sheriff." (*Matter of Simon* v. *Bailey,* 172 Misc. 186, 188, in which an application made under article 78 of the Civil Practice Act to direct the Sheriff to hold a sale, was denied.) The papers are sufficient for the purpose of a section 696 proceeding.

Section 696, providing the "court or judge before whom the proceeding is brought, *shall* hear and determine title" does not specify the court in which the proceeding to determine title shall be instituted. (Italics supplied.) It has been held applicable to the Municipal Court (*Long Is. Tinsmith Supply Corp.* v. *Ramberg & Son,* 172 Misc. 158, *supra*) and to the Supreme Court also (*Matter of Monarch Sales Co.* v. *Vollmer,* 188 Misc. 281, *supra*; cf. *Wish* v. *Malangone,* 259 App. Div. 1054; *Dunn* v. *Seidenschwarz,* 173 Misc. 495). It is clear, however, that the Legislature of this State cannot bind or mandate the Federal court to declare title. Therefore, the mandate of the section to "any court or judge" has no applicability to the Federal court.

Section 696 had several purposes. It was designed to prevent the practice of holding of fraudulent inquisitions by Sheriff's

juries (cf. *Gilmour Door Co.* v. *Shea,* 150 App. Div. 239), to protect the Sheriff and the judgment creditor and to afford them redress against a fraudulent claim interposed to block executions on judgments (cf. *Isabelle Props.* v. *Edelman,* 164 Misc. 192).

A failure to grant the relief sought here negatives the very purpose and intent of the statute. The Federal action might never determine title. When that action is decided eventually, if Unilease or Equilease prevails as its interest may be there asserted or challenged, the outcome may prove only a Pyrrhic victory; for in that action Skinner's cross claim against Marine exceeds the value of the notes.

We do not now hold there is no possible circumstance where the court might deny or delay a hearing. Whether it is concluded here that "shall" as appears in the statute mandates a hearing, or whether we approach the denial of the relief sought as an exercise of discretion, the order appealed from must be reversed. The denial, if discretionary, is not warranted under the circumstances. If the term "shall" be construed as mandatory, there is no room for discretion.

Accordingly, the order appealed from should be reversed on the law and in the exercise of discretion, with costs, the application granted, and a hearing directed.

RABIN, J. P., McNALLY, STEUER and BASTOW, JJ., concur.

Order, entered on January 24, 1963, unanimously reversed, on the law and in the exercise of discretion, with $20 costs and disbursements to the appellant, the application granted and a hearing directed.